*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CRESTWOOD HOMEOWNERS ASSOCIATION, INC.,

UNPUBLISHED
September 29, 2022

Plaintiff-Appellant,

v

No. 359070
Otsego Circuit Court
LC No. 21-018475-CH

KATHLEEN PAWLANTA,

Defendant-Appellee.

Before: M. J. KELLY, P.J., AND CAMERON AND HOOD, JJ.

CAMERON, J. (*concurring in part and dissenting in part*).

In this dispute over whether a homeowners association's restrictive covenant permits the construction of a storage shed, I agree with the majority's conclusion that the building restriction in this case not enforceable because the Association failed to enforce similar violations in the past. I also agree with the majority's conclusion that the phrase "auxiliary construction" in the restrictive covenant is not ambiguous and therefore the restrictive covenant is enforceable. But I disagree with the majority's determination that the meaning of the phrase "auxiliary construction" is so expansive that it captures nearly any type of new building, including the storage shed in this case, so long as the building is complementary to a single-family dwelling. I therefore concur in part and dissent in part.

The restrictive covenant states:

> No building or other structure shall be erected or altered or permitted on any site in the Plat of Crest Wood Manor #2 and Crest Wood Manor #3 other than one single family dwelling house with attached garage; except swimming pool, tennis court, badminton court, walls or fences and such other auxiliary construction.

In other words, the covenant prohibits construction of any "building or other structures" on the property unless the new construction fits into one of two narrow exceptions. First, a property owner may build one "single family dwelling house with attached garage." Second, an owner may build a "swimming pool, tennis court, badminton court, walls or fences and such other *auxiliary*

*construction.*" The majority concludes that the storage shed in this case is expressly authorized because it qualifies as an auxiliary construction.

I take no issue with the majority's definition of "auxiliary construction" as a structure built that complements and supplements a single-family home. I also agree that the storage shed in this case is a building that is being used in a way that complements Pawlanta's single-family home. Therefore, the generic phrase "auxiliary construction," standing alone, would appear at first blush to be broad enough to permit the construction of Pawlanta's storage shed.

But the phrase does not stand alone. The covenant uses "auxiliary construction" as a catch-all phrase at the end of a short list of structures that are permitted by the Association. And unlike the generic catch-all, the list of permissible construction is very specific: a swimming pool, tennis court, badminton court, and walls or fences. Thus, the meaning of the phrase auxiliary construction is not just found in a dictionary. Rather, it requires us to examine that definition in the context of the specific list in which it is found.

As the majority correctly notes, this examination requires us to apply the cannon *ejusdem generis*. This cannon of construction states that when construing a provision that includes a list of terms that includes a catch-all phrase, the meaning of the catch-all phrase is limited to the same kind or type of items that are in the list. Stated more plainly, the cannon would instruct that—in a list limited to apples, oranges, grapefruit, strawberries, tangerines, and "other foods"—the phrase "other foods" would include only other fruits.

In my opinion, the majority misapplies this cannon. I first note that opening language for the restriction prohibits all "building[s] or other structure[s]" unless expressly authorized. Indeed, the restriction expressly permits the construction of only one building: a single-family home with an attached garage. Following this limited authorization, a specific list of *structures* is identified that may also be built on the property, namely: a swimming pool, tennis court, badminton court, and walls or fences. The items in this specific list are all different forms of structures.[1] And none of the items in the list are buildings.[2] The storage shed in this case is unquestionably a building. Therefore, the proper application of cannon *ejusdem generis* would define the catch-all phrase "auxiliary construction" to include the same kind or type of *structures* in the list. Because the storage shed is a building and the restrictive covenant permits only structures, the storage shed is not permitted.

This analysis is similar to our Supreme Court's reasoning in *Rott v Rott*, 508 Mich 274, 299-300; 972 NW2d 789 (2021), in which the Court considered the following phrase from Michigan's recreational land use act (RUA), MCL 324.73301, "fishing, hunting, trapping, camping, hiking, sightseeing, motorcycling, snowmobiling, or any other outdoor recreational use or trail use." MCL 324.73301(1). Looking to the "unifying characteristics" of the listed activities,

---

[1] The term "structure" is defined as: "[S]omething constructed, as a building or bridge." *Random House Webster's College Dictionary* (2001).

[2] The term "building," is defined as: "[A]ny relatively permanent enclosed structure on a plot of land, having a roof and usu[ally] windows." *Random House Webster's College Dictionary* (2001).

the Court reasoned that the activity at issue—ziplining—was not "any other outdoor recreational" activity contemplated by the RUA. The Court's reasoning is directly applicable in this case because the "unifying characteristics" of the listed structures do not include buildings. Thus, Pawlanta's storage shed, which is a building, is very different from the listed structures.

Nevertheless, I concur in part and dissent in part because I agree with the majority that the Association waived enforcement by failing to enforce earlier violations.


/s/ Thomas C. Cameron